```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

-------------------------------- x
PETER BUCK,                      :
                                 :
         Plaintiff,              :
                                 :
v.                               :
                                 :   Civil No. 3:18-cv-1253 (AWT)
UNITED STATES OF AMERICA,        :
                                 :
         Defendant.              :
-------------------------------- x
```

### RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT

The United States moves for partial summary judgment, asking the court to "conclude as a matter of law that no discount should be available for a gift of a fractional interest unless the taxpayer held such interest in fractional form before the gift." Def.'s Mem. in Supp. of Mot. for Part. Summ. Judg. (ECF No. 49-1) ("Def. Mem.") at 13. For the reasons set forth below, the government's motion is being denied.

### I.  FACTUAL BACKGROUND

Between 2009 and 2013, plaintiff Peter Buck purchased $82,853,050 in tracts of timberland in upstate Maine and Vermont. From 2010 to 2013, he gifted interests in these tracts to his two sons, Christopher Buck and William Buck. Each son received a 48% interest in each tract, while the plaintiff retained a 4% interest for himself.

Each year from 2010 to 2013, the plaintiff reported and

-1-

paid gift tax on these transfers as two separate gifts to his sons, each representing the gifted 48% interest in given tracts. The plaintiff valued the gifts using discounts meant to account for the possibility that the interests were less valuable to hypothetical buyers than they might be otherwise. While the combined purchase price of the properties was $82,853,050, the plaintiff declared the discounted value of each 48% fractional interest to be $18,496,249, a total of $36,992,498 for the two sons. This represented a 55% discount from the total purchase price.

The Internal Revenue Service ultimately challenged the plaintiff's valuations and assessed deficiencies in the plaintiff's gift tax returns. The plaintiff paid this amount in full and filed claims for refunds before bringing this action. The government now moves for partial summary judgment on a question of law.

## II.  LEGAL STANDARD

A court may only grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Rogoz v. City of Hartford, 796

F.3d 236, 245 (2d Cir. 2015).

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Id. at 248.

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)). Because credibility is not an issue, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (internal quotation marks omitted) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)).

**III. DISCUSSION**

The government moves for partial summary judgment on a legal issue. It asks the court to "conclude as a matter of law that no discount should be available for a gift of a fractional interest unless the taxpayer held such interest in fractional form before the gift, rather than viewing several simultaneously gifted portions of the property as fractional interests in the hands of the donor for purpose of valuing the gift." Def. Mem. at 13-14. The government maintains that gift tax law categorically prohibits such a discount because it is contrary to one of the primary purposes of the gift tax. It contends that "the value of the property [here] to which the gift tax applies is the fair market value of the Properties transferred to CLWH, minus the portion of each that served to enhance Dr. Buck's 4-percent interest in CLWH"; that "it is not appropriate to apply fractional interest discounts in valuing a gift of land to more than one individual"; and "that the value of each donee's interest is simply the value of the whole times the percent ownership." Id. at 29.

Fractional interests reflect ownership over parts of the whole, which "might consist of a 'minority interest' . . . or a 'majority interest' . . . , also referred to as a 'controlling interest.'" Recovery Group v. Comm'r, T.C. Memo. 2010-76, 2010 WL 1507590, at *7 n.12 (2010). Fractional interest discounts

-4-

allow taxpayers to account for a lower value that may attach to certain fractional interests in property on account of an owner's lack of control over the property given her status as a minority co-owner and the lack of marketability for her interest in the property given the difficulty of finding a buyer for a fractional interest. See, e.g., Estate of Stewart v. Comm'r, 617 F.3d 148, 154 (2d Cir. 2010).

The government advances two principal arguments in support of its position. Both are unavailing.

### A. Reading the Gift Tax and Estate Tax In Pari Materia Does Not Dictate a Per Se Prohibition on Fractional Discounts When a Donor Did Not Hold a Fractional Interest Prior to the Gift.

The government contends that "allowing the discounts would endorse a circumvention of one of the primary purposes of the gift tax, which is to assure that estate tax is not avoided." Def. Mem. at 13. The government notes, correctly, that "[t]here is no question that . . . there would be no discounts based on the separate values of the interests received by each son" if this were a case about the estate tax. Id. at 2. See, e.g., Ahmanson Foundation v. United States, 674 F.2d 761, 768 (9th Cir. 1981) ("There is nothing in the statutes or in the case law that suggests that valuation of the gross estate should take into account that the assets will come to rest in several hands rather than one."). The government argues that, when valuing

-5-

interests in property like the property interests here, discounts should be prohibited for gift tax purposes because "the gift tax is construed *in pari materia* with the estate tax" in order to prevent taxpayers from "avoiding the estate tax altogether" by "depleting their estates through *inter vivos* transfers." Def. Mem. at 14-15.

The government cites to three cases for the proposition that the gift tax and the estate tax are in pari materia and must be construed together, but none support the government's position in this case.

In Merrill v. Fahs, 324 U.S. 308 (1945), the Commissioner determined that gift tax was due where the taxpayer had entered into an antenuptial agreement pursuant to which he transferred $300,000 to his wife and, in exchange, the wife relinquished her marital rights. The Court stated:

> [T]his case turns on the proper application of s 503 of the Revenue Act of 1932, 47 Stat. 169, 247, 26 U.S.C. s 1002, 26 U.S.C.A. Int.Rev. Code, s 1002. In the interest of clarity we reprint it here: 'Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this title, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.' Taxpayer claims that Miss Desmare's relinquishment of her marital rights constituted 'adequate and full consideration in money or money's worth.' The Collector, relying on the construction of a like phrase in the estate tax, contends that release of marital rights does not furnish such 'adequate and full consideration.'

> . . . .
>
> The guiding light is what was said in Estate of Sanford v. Commissioner, 308 U.S. 39, 44, 60 S.Ct. 51, 56, 84 L.Ed. 20: 'The gift tax was supplementary to the estate tax. The two are in pari materia and must be construed together.' The phrase on the meaning of which decision must largely turn--that is, transfers for other than 'an adequate and full consideration in money or money's worth'--came into the gift tax by way of estate tax provisions.

Id. at 310-11. Because the estate tax and the gift tax must be construed together, the Court concluded: "Congress undoubtedly intended the requirement of 'adequate and full consideration' to exclude relinquishment of dower and other marital rights with respect to the estate tax. . . . We believe that there is every reason for giving the same words in the gift tax the same reading." Id. at 312-13.

Commissioner v. Converse, 163 F.2d 131 (2d Cir. 1947), was a case where the "only consideration the transferor received for making" a payment to his former wife "was the release of his wife's marital rights." Id. at 131. Citing to, inter alia, Merrill v. Fahs, the court reached the same conclusion, namely that the release of marital rights was not "an adequate and full consideration in money or money's worth, which Sec. 1002 makes a condition precedent to the exclusion of the gift tax on transfers . . . ." Id. The court also cited to Sanford's Estate v. Commissioner, 308 U.S. 39 (1939), stating: "The underlying reason for taxing as gifts transfers made only in consideration

for the release of marital rights in accordance with antenuptial agreements, as shown by the Wemyss and Merrill cases, is that the estate and gift tax statutes are in pari materia." Id. at 133.

The interpretation of the same section of the Internal Revenue Code of 1939 was also at issue in Heringer v. Commissioner, 235 F.2d 149 (9th Cir. 1956). There the petitioners transferred certain farmlands to a corporation in which they held 40% of the outstanding stock. The Tax Court determined that the value of the gift was the full stipulated fair market value of the conveyed land, but the court concluded:

> It is well established that the provisions of the gift tax statute are to be construed as in pari materia with the provisions and purposes of the estate tax statute, see e.g., Sanford's Estate v. C.I.R., 1939, 308 U.S. 39, 60 S.Ct. 51, 84 L.3d 20. It is evident that the value of petitioners' shares in the family corporation necessarily reflected proportionately the increased net worth of the corporation which increased value would be includible in petitioners' gross estates.
>
> Giving the language of the statute its ordinary meaning petitioners' intention was to donate not more than 60% of the transferred property.

Id. at 152-53.

These cases support the conclusion that the same words appearing in the gift tax statute and the estate tax statute should be understood to have the same meaning. They also support the conclusion that the taxpayer should not also be required to

-8-

pay gift tax where the value of property retained by the taxpayer after purportedly making a gift will be included in the taxpayer's gross estate for estate tax purposes. But they do not provide support for the legal conclusion advocated by the government here, i.e., that if there would be no discount in determining the value of property for purposes of the estate tax, the interests in the property should be aggregated and there should be no discount in determining the value of those interests for purposes of the gift tax.

The analyses in Merrill, Converse, and Heringer rely on Sanford's Estate v. Commissioner, 308 U.S. 39 (1939), but the reasoning in that case does not provide support for the government's position either. At issue in Sanford's Estate was the consequence for gift tax purposes of a donor's retention of control over the disposition of trust property. The Court stated:

> The rule was thus established, and has ever since been consistently followed by the Court, that a transfer of property upon trust, with power reserved to the donor either to revoke it and recapture the trust property or to modify its terms so as to designate new beneficiaries other than himself is incomplete, and becomes complete so as to subject the transfer to death taxes only on relinquishment of the power at death.

Id. at 43-44. That statement was followed by the language with respect to the gift tax and the estate tax being in pari materia:

> There is nothing in the language of the statute, and our attention has not been directed to anything in its legislative history to suggest that Congress had any purpose to tax gifts before the donor had fully parted with his interest in the property given, or that the test of the completeness of the taxed gift was to be any different from that to be applied in determining whether the donor has retained an interest such that it becomes subject to the estate tax upon its extinguishment at death. The gift tax was supplementary to the estate tax. The two are in *pari materia* and must be construed together. *Burnet v. Guggenheim*, *supra*, 286. An important, if not the main, purpose of the gift tax was to prevent or compensate for avoidance of death taxes by taxing the gifts of property *inter vivos* which, but for the gifts, would be subject in its original or converted form to the tax laid upon transfers at death.

Id. at 44. Thus, while Sanford's Estate states that an important or main purpose of the gift tax was to prevent or compensate for avoidance of death taxes, the context in which that statement was made must be considered. It was made as part of an explanation of why a gift is not taxed before the donor has fully parted with his interest in the property given, i.e., because the property will be included in the donor's estate and thus subject to the estate tax. The statement was not made to provide a rule of construction for the gift tax statute, i.e., that the statute should be construed to ensure that the estate tax is not avoided.

The government's position in this case is also undermined by Estate of Stewart, 617 F.3d 148 (2d Cir. 2010); Citizens Bank & Trust Co. v. Commissioner, 839 F.2d 1249 (7th Cir. 1988); and

-10-

Mooneyham v. Commissioner, T.C. Memo. 1991-178, 1991 WL 55835 (1991). In Estate of Stewart, the court noted:

> Estate planners have, however, found a highly effective way to lower both estate and gift taxes when passing real estate to the next generation. Dividing the real estate into separate interests usually lowers the property's fair market value and thereby also the taxes due on it. *See* David Westfall et al., Estate Planning Law & Taxation ¶ 2.05[3] (2009). The fair market value of separate interests is typically discounted by about 10-20% for lack of control and marketability. *Id.*

617 F.3d at 153-54. The court's observation that "[t]his technique works because the estate tax is imposed on the fair market value of property, not on the value of the property to the person inheriting it," id. at 154 n.8, is contrary to a conclusion that "no discount should be allowed as a matter of law," Def. Mem. at 14.

Citizens Bank involved an order of the Tax Court in a dispute over the valuation of stock for estate and gift tax purposes. As part of its analysis, the court considered an estate tax hypothetical, which it described as a "facile avoidance of gift or estate tax," 839 F.2d at 1252, and which is highly analogous to the situation here:

> Suppose the owner of a tract of land ripe for commercial development and worth $1 million under single ownership makes a will dividing the tract into three parcels and bequeathing one to each of his adult children. The tract is less valuable as three units than as one, and let us say that the value of each one-third is only $300,000. But then the legatees get together and sell their parcels as a single unit for

-11-

> $1 million. (It might seem that if such a transaction is feasible each parcel must really be worth $333,333.33. But this reasoning ignores transaction costs, which may be substantial if the parcels are in the hands of strangers, negligible if they are in the hands of family members.) If the estate is allowed to value the land on a divided basis (i.e., at $900,000), it will escape tax on 10 percent of the actual value of the legacies.

Id. at 1252. The court's analysis then continues with the discussion, inter alia, of considerations that might render the aggregate market value of separate parcels of land less than the market value of the land as a single tract:

> The trick may have succeeded in *Whittemore v. Fitzpatrick*, 127 F.Supp. 710 (D.Conn.1954), where the owner of all 820 shares of the stock of a corporation gave 200 shares to each of his three sons, and the court refused to include a control premium in its valuation of the gifts. There is, however, a distinction between that case and our hypothetical case. The gifts were of equal shares in a corporation, and it was speculative whether the donees (the grantor's children) would pull together, or, as is not uncommon in closely held corporations, pull apart. Since it is hard to sell stock in a closely held corporation to outsiders, there may be no easy solution if the siblings bicker. But in our hypothetical case the siblings own parcels in a tract of land, and the parcels can be combined, and the land sold as a unit, without great difficulty. How solid is this distinction, though? For the aggregate market value of the separate parcels of land to be worth much less than the market value of the land as a single tract, the transaction costs of assemblage into a single tract must be considerable; and even if the cost would be greater for strangers than for family members, the possibility of bickering and dissension within a family can never be excluded. So what we described earlier (following *Ahmanson*) as a facile mode of tax avoidance might actually be a risky, and therefore self-limiting, tactic.

Id. at 1252-53.

In Mooneyham, the petitioner "owned 100 percent of certain real property," from which the "petitioner transferred a 50-percent undivided interest . . . to her brother." 1991 WL 55835. The petitioner filed a gift tax return, supported by an appraisal, that "appl[ied] a discount of 25 percent for [the] fractional interest" that the petitioner gifted to her brother. Id. The Tax Court accepted that a fractional interest discount was available as a matter of law and found persuasive the petitioner's arguments that "a discount [wa]s appropriate because of problems of control, lack of marketability, and costs of partition relating to a fractional undivided interest." Id.

> **B. The Value of Each Gift is Ascertained Separately at the Time It Passes From the Donor to the Donee, Not Beforehand.**

The government emphasizes that "the value of a gift for federal gift tax purposes is the value to the donor, not the donee." Def. Mem. at 2. The government then argues that the value of the properties gifted here should "reflect[] the economic reality that Dr. Buck transferred what to him equaled the value of a 96% interest in each of the Properties." Id. at 13; see also id. at 19-20 ("[T]he value *to Dr. Buck* of what he parted with was 96% of the total value of the property prior to the transfer."). The government maintains that disallowing fractional discounts where there was no fractional interest

beforehand ensures that "the value of the gift made by the donor, not the measure of enrichment to the donee, . . . is determinative." Id. at 18. In other words, even if the property is now worth less because of the creation of fractional interests, the property was worth more in the donor's hands before the fractional interests were created, and it is that value, not the new value, that should be the basis for calculating the gift tax.

The gift tax statute, the regulations, and relevant case law require the court to look at the value of each gift at the time it passes from the donor to the donee. The gift tax statute pertaining to valuation of gifts provides: "If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift." 26 U.S.C. § 2512(a). By way of contrast, the estate tax statute expressly looks at "the value of all property to the extent of the interest therein of the decedent at the time of his death." Id. § 2033 (emphasis added). The regulations reflect such a distinction. The gift tax regulations provide that "if a gift is made in property, its value at the date of the gift shall be considered the amount of the gift." 26 C.F.R. § 25.2512-1 (emphasis added).[1] The

---

[1] It would be as reasonable to read the gift tax statute as applying to multiple gifts made from the same initial property as it would be to read it as applying to individual gifts. The gift tax regulations, however, are reasonably read as only applying to individual gifts.

regulations state that "the tax is a primary and personal liability of the donor, is an excise upon his act of making the transfer, [and] is measured by the value of the property passing from the donor . . . ." Id. § 25.2511-2. The estate tax regulations provide that "the value of the gross estate of a decedent . . . is the total value of the interests described" by statute. Id. § 25.2031-1(a).

Moreover, the regulations require that gifts be valued using "an objective test using hypothetical buyers and sellers in the marketplace," not one "which envisions a particular buyer and seller." LeFrak v. Comm'r, T.C. Memo. 1993-526, 1993 WL 470956, at *3 (1993) (citing Estate of Andrews v. Comm'r, 79 T.C. 938, 956 (1982); Kolom v. Comm'r, 71 T.C. 235, 244 (1978)). This is consistent with the fact that the gift tax applies to a donor's gift even where no donee is yet ascertained. See Robinette v. Helvering, 318 U.S. 184, 186-87 (1943) (upholding gift tax where "the identity of the donee may not then be known or ascertainable").

The government's position on this point is also inconsistent with LeFrak and Shepherd v. Commissioner, 115 T.C. 376 (2000). LeFrak directly addresses the question at issue here.[2] In LeFrak, one of the petitioners transferred "20

---

[2] LeFrak is a Tax Court memorandum opinion, and such opinions "do not establish a new rule of law, but merely apply settled law to a new set of facts." Fed. Tax Valuation 1.05,

-15-

buildings, formerly held solely by petitioner," to "new partnerships created simultaneously with the conveyances" and gave 30% "interests in the respective partnerships to the donees," 1993 WL 470956, at *4, all of whom were the petitioner's "children or their trustees," id. at *1. While the petitioners claimed that the transfers were of partnership interests, the Tax Court held that the donor actually transferred "his interest in the buildings"--that is, in real estate. Id. at *5-6. The Commissioner "valued the gift on the basis that fractional interests in property were transferred." Id. at *6. The Tax Court endorsed the Commissioner's approach:

> For gift tax purposes, the value of the fractional interest in the property transferred, and not the value of the property as a whole, must ultimately be decided. . . . . The fair market value of a fractional interest in real property cannot as a general rule be derived by simply applying the percentage of the interest in the whole to the value of the entire property.

Id. at *15. The Tax Court proceeded to apply a combined minority discount and discount for lack of marketability "from the full value of each gift to each donee." Id. at *18. See also Zable v. Comm'r, T.C. Memo. 1990-55, 1990 WL 8598 (1990) (holding that, for gift tax purposes, "[i]t is the fair market value of these fractional interests, and not the fair market value of the

---

1998 WL 1038927, *2. LeFrak serves as persuasive authority because its facts "are closely similar to those" presented in this case. Id.

property as a whole, which must ultimately be determined").

In Shepherd, the Tax Court applied fractional interest discounts in analogous circumstances. There the petitioner joined with his two sons to form a partnership in which the petitioner held a 50% interest and each son held a 25% interest. The petitioner transferred to the partnerships shares of his majority interests in three banks, as well as leased land in which the petitioner "owned the entire interest," subject to the lease. 115 T.C. at 378. The petitioner claimed a minority discount of 15% for the bank shares and reported the value of the leased land as a whole at $400,000. Because "the gift tax computed" fell below "his claimed maximum unified credit," the petitioner "reported no gift tax due on these transfers." Id. The Commissioner assessed a gift tax deficiency on the basis that the "fair market value of the 50-percent interest in the leased land that petitioner gifted to his sons was $639,300," far greater than the $200,000 value that the petitioner had claimed, but the Commissioner accepted the minority discount for the shares as reported. Id.

The Tax Court observed that "the parties disagree[d] as to what valuation discounts should apply to petitioner's transfer of the leased land and bank stock" and, specifically, about "whether petitioner's transfers to the partnership should reflect minority and marketability discounts attributable to the

-17-

sons' minority-interest status in the partnership." Id. at 383. The Tax Court determined that the gifts were indirect gifts of undivided interests in the land and stocks, and it declined to "aggregate the separate, indirect gifts to his sons," applying settled precedent to hold that these "must be valued separately." Id. at 389-90 (citing Estate of Bosca v. Comm'r, T.C. Memo. 1998-251, 1998 WL 376348 (1998)). The Tax Court rejected the Commissioner's argument that "no valuation discount for fractional interests is warranted with respect to the leased land" "as failing to give adequate weight to other reasons for discounting a fractional interest in the leased land, such as lack of control in managing and disposing of the property." Id. at 401-02. The Tax Court then proceeded to use a discount of 15% for both the leased land and the bank stocks.

The results in LeFrak and Shepherd are consistent with the well-established principle that gifts should be valued at the time of the gift, not before or after they are made. See also Goodman v. Commissioner, 156 F.2d 218, 219 (2d Cir. 1946) (holding that the gift's value was its value "at the moment it [wa]s made" and rejecting the petitioner's argument that the gift should be valued "at a moment of time antecedent to the time when the gift became complete").

LeFrak and Shepherd are also consistent with the principle that each separate gift must be valued separately. In Estate of

Bosca v. Commissioner, for example, the Tax Court reiterated its past holdings "reject[ing] attempts by taxpayers to aggregate separate gifts of stock made on the same day in order to claim a blockage discount," as well as its holding "reject[ing] an attempt by the Commissioner to aggregate separate gifts of stock on the same day" in an effort "to value the gifts as 'control stock.'" 1998 WL 376348, at *11. In both cases, the Tax Court made clear that "each separate gift must be valued separately." Id. Under applicable law, the gifts here are not a single 96% interest but two 48% interests given to two different donees, and the gifts must be valued separately at the time of transfer.

## IV.  CONCLUSION

For the reasons set forth above, the United States' Motion for Partial Summary Judgment as to Whether Discounts are Appropriate in Valuing Gifts of Partial Interests in Timberland Properties for Federal Gift Tax Purposes (ECF No. 49) is hereby DENIED.

It is so ordered.

Dated this 24th day of September 2021, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge
